IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MAX LUCAS, Individually and On Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff | § § | |
| V. | § § | CIVIL ACTION NO. 4:11-CV-01940 |
| NOYPI, INC., PIONEER CONTRACT SERVICES, INC, SUSAN SUSUSCO and ED FRITCHER, | § § § § | |
| Defendants | § | |

---

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

---

Respectfully Submitted,

COZEN O'CONNOR, P.C.

/s/ Charles H. Wilson
Southern District Bar No. 34581
One Houston Center
1221 McKinney, Suite 2900
Houston, Texas  77010
Telephone:  832.214.3900
Facsimile:  832.214.3905
Email:  cwilson@cozen.com

**ATTORNEYS FOR DEFENDANT**

**OF COUNSEL**
Daniel J. Schuch
Southern District Bar No. 890703
COZEN O'CONNOR, P.C.
One Houston Center
1221 McKinney, Suite 2900
Houston, Texas 77010
Telephone: 832.214.3900
Facsimile: 832.214.3905
Email:  dschuch@cozen.com

## <u>TABLE OF CONTENTS</u>

**Page**

I.     <u>STAGE OF PROCEEDING</u> ....................................................................... 1

II.    <u>ARGUMENT & AUTHORITIES</u> ........................................................... 2

     A.     **Defendants Properly Pled The MCA Exemption As An Affirmative Defense**.2

          1.     Plaintiffs' challenge is untimely. ................................................. 2

          2.     Defendants sufficiently pled the MCA Exemption to the FLSA. ............... 3

     B.     **The MCA Exemption Should Be Fairly Construed** ........................................ 5

     C.     **Plaintiffs Are Exempt From Overtime Under The MCA Exemption**............. 6

          1.     Plaintiffs were employed by a motor carrier subject to the Secretary of Transportation's jurisdiction. ...................................................... 7

          2.     Plaintiffs were engaged in activities that directly affected the operational safety of commercial motor vehicles. .......................................... 9

III.    <u>CONCLUSION</u> ..................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Allen v. Coil Tubing Services, L.L.C.,*
   846 F. Supp.2d 678 (S.D.Tex. 2012) .............................................................10, 12

*Arnold v. Ben Kanowsky, Inc.*
   361 U.S. 388 (1960)..................................................................................................5

*Belt v. EmCare, Inc.,*
   444 F.3d 403 (5th Cir. 2006) ...................................................................................5

*Brennan v. Schwerman Trucking Co. of Virginia, Inc.,*
   540 F.2d 1200 (4th Cir. 1976) .................................................................................9

*Cabin Foods, LLC v. Rich Products Corp.,*
   2012 WL 433115 (W.D. Tex. 2012).........................................................................3

*Collins v. Heritage Wine Cellars, Ltd.,*
   2008 WL 5423550 (N.D.Ill. Dec. 29, 2008)............................................................6

*Funding Sys. Leasing Corp. v. Pugh,*
   530 F.2d 91 (5th Cir. 1976) .....................................................................................4

*Garza v. Smith Int'l, Inc.,*
   2011 WL 835820 (S.D. Tex. March 7, 2011)...........................................................8

*Heidingsfelder v. Burk Brokerage, LLC,*
   2010 WL 4364599 (E.D.La. Oct. 24, 2010) ............................................................5

*Hood v. Mercy Healthcare Arizona,*
   23 F.Supp.2d 1125 (D.Ariz. 1997) ..........................................................................5

*Ingraham v. U.S.,*
   808 F.2d 1075 (5th Cir. 1987) .................................................................................3

*Kansas Reinsurance Co. v. Congressional Mortg. Corp.,*
   20 F3d 1362 (5th Cir. 1994) ..................................................................................13

*Levinson v. Spector Motor Serv.,*
   330 U.S. 649 (1947)............................................................................................6, 12

*Reese v. Anderson,*
   926 F.2d 494 (5th Cir. 1991) .................................................................................13

*Songer v. Dillon Resources, Inc.*,
  618 F.3d 467 (5th Cir. 2010) ...................................................................6, 9, 10

*Southland Gasoline Co. v. Bayley*,
  319 U.S. 44 (1943) ............................................................................................6

*Talbert v. American Risk Ins. Co.*,
  405 Fed. Appx. 848 (5th Cir. 2010) .................................................................4

*Troutt v. Stavola Bros., Inc.*,
  107 F.3d 1104 (4th Cir. 1997) ........................................................................12

*U.S. v. Brink*,
  2011 WL 835828 (S.D. Tex. 2011) ..................................................................3

*Woodfield v. Bowman*,
  193 F.3d 354 (5th Cir. 1999) ...........................................................................3

*WordPerfect Corp. v. Financial Services Marketing Corp.*,
  85 F.3d 619, 1996 WL 254830 (5ᵗʰ Cir. April 15, 1996) ................................4

**FEDERAL STATUTES**

49 U.S.C. § 31132 ...................................................................................................8

49 U.S.C.A. § 13501 ............................................................................................7, 8

**RULES**

Fed. R. Evid. 408 ....................................................................................................4

Fed. R. Civ. P. 56(f) ...............................................................................................4

**REGULATIONS**

29 C.F.R. § 782.2 ............................................................................................5, 7, 9

46 Fed.Reg. 37,902 .................................................................................................9

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants, NOYPI, INC. ("NOYPI"), PIONEER CONTRACT SERVICES, INC. ("Pioneer"), SUSAN SUSUSCO ("Sususco"), and ED FRITCHER ("Fritcher")(collectively referred to as "Defendants"), submit this Reply to Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment ("Response").  Plaintiffs' Response fails to adduce sufficient evidence to illustrate the existence of a genuine issue of material fact; accordingly, Defendants are entitled to summary judgment, as a matter of law.

## I.      STAGE OF PROCEEDING

On May 20, 2011, Plaintiffs, MAX LUCAS ("Max") and URANUI GEORGE LUCAS ("Uranui") (collectively referred to as "Plaintiffs"),  filed the instant lawsuit, asserting violations of the FLSA.  (Doc. 1).  On September 30, 2011, Defendants filed a Motion to Dismiss or for More Definite Statement.  (Doc. 15).  On November 4, 2011, the Court denied Defendants' Motion to Dismiss but granted in part the Motion for More Definite Statement, pursuant to which Plaintiffs were ordered to file an Amended Complaint.  (Doc. 20).  On December 14, 2011, Plaintiffs filed an Amended Complaint.  (Doc. 23).  On December 28, Defendants filed an Answer to Plaintiffs' Amended Complaint.  (Doc. 24).  On July 30, 2012, Defendants filed a Motion for Summary Judgment, arguing Plaintiffs were exempt from the FLSA's overtime requirements under the Motor Carrier Act ("MCA") Exemption.  (Doc. 31).  Plaintiffs' filed a Response in Opposition to Defendants' Motion for Summary Judgment on August 21, 2012. (Doc. 35).  Docket Call for the instant matter is scheduled for October 12, 2012.  (Doc. 29).

1

## II.    ARGUMENT & AUTHORITIES

### A.    DEFENDANTS PROPERLY PLED THE MCA EXEMPTION AS AN AFFIRMATIVE DEFENSE.

In their Answer to Plaintiffs' First Amended Complaint, Defendants raised the following affirmative defense to Plaintiffs' claim for overtime wages under the FLSA:

> Defendants affirmatively plead that they were not required to pay overtime to Plaintiff because his position was subject to an exemption to the payment of overtime under FLSA, including, but not limited to, ***the motor carrier exemption in Section 13(b)(1) of the FLSA***.

(Doc. 24, p. 9)(emphasis added).   In their Response, Plaintiffs challenge the adequacy of the foregoing defense:

> Defendants have simply pled, without setting forth any specific facts, that Plaintiff was exempt…This falls well short of the accepted pleading requirement for affirmative defenses.   Therefore, based on the overwhelming weight of authority, Defendants have waived any affirmative defense that Plaintiff and Opt-In Plaintiff were exempt from the overtime requirements of the FLSA.

(Doc. 35, p. 8)(*citing Funding Sys. Leasing Corp. v. Pugh*, 530 F.2d 91, 95 (5th Cir. 1976)).   As discussed below, Plaintiffs' challenge is untimely and, in any event, Defendants' affirmative defense asserting the MCA Exemption was properly pled and remains a viable defense against Plaintiffs' claims.

### 1.    Plaintiffs' challenge is untimely.

As a threshold matter, Plaintiff's objection to the sufficiency of Defendants' affirmative defense is untimely.   As this Court confirmed in *Desparado Motor Racing & Motor-Cylces, Inc. v. Robinson*:

> [T]he proper remedy for an insufficient affirmative defense is a motion to strike under Rule 12(f)….Under Rule 12(f), a party may move to strike defenses within 21 days after being served with the pleading if a responsive pleading is not allowed.   Thus, if [plaintiff] wished to move to strike any of [defendant's] affirmative defense[s], they were required to do so within 21 days of service of

2

> [defendant's] Answer….[Plaintiff's] motion to strike [defendant's] affirmative
> defenses is not timely and the relief sought is accordingly denied.

2010 WL 2757523, 2 (S.D. Tex. 2010)(*citing* FRCP 12(f)); *see also U.S. v. Brink*, 2011 WL
835828, 2 (S.D. Tex. 2011).

Here, Defendants filed their Answer to Plaintiffs' Amended Complaint on December 28,
2011.  (Doc. 24).  Accordingly, had Plaintiffs wished to challenge the sufficiency of Defendants'
affirmative defenses, a motion to strike should have been filed with the Court by January 18,
2012.   Since Plaintiffs failed to raise a timely challenge against Defendants' affirmative
defenses, their objection should be denied.

### 2.      Defendants sufficiently pled the MCA Exemption to the FLSA.

Even assuming, *arguendo*, Plaintiffs challenge was timely, Defendants nevertheless
adequately pled their MCA Exemption affirmative defense, and Plaintiffs are not prejudiced, in
any event.  Addressing an argument similar to Plaintiffs', the U.S. District Court for the Western
District of Texas explained, "motions to strike are disfavored, and are granted only when the
defense fails as a matter of law or fact, the defense is completely unrelated to the claims at issue,
or the maintenance of the defense would prejudice the movant."  *Cabin Foods, LLC v. Rich
Products Corp.*, 2012 WL 433115, 2 (W.D. Tex. 2012).  As this Court acknowledged in *Yaklin v.
W – H Energy Services, Inc.*:

> Where the affirmative defense is raised in the trial court in a manner that does not
> result in unfair surprise…technical failure to comply precisely with Rule
> 8(c)(requiring that affirmative defenses be pled) is not fatal….The concern is that
> a defendants should not be permitted to lie behind a log and ambush a plaintiff
> with an unexpected defense.

2008 WL 4692419, 2 (S.D. Tex. 2008)(internal citations omitted)(*citing Rogers v. McDorman*,
521 F.3d 381, 385 – 386 (5th Cir. 2008); *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir.
1999); *see also Ingraham v. U.S.*, 808 F.2d 1075, 1079 (5th Cir. 1987).  "An affirmative defense

is not waived if it is raised at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond." *Talbert v. American Risk Ins. Co.*, 405 Fed. Appx. 848, 851 (5th Cir. 2010)(*citing Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 860 (5th Cir. 2000)).

Here, Plaintiffs do not argue they are surprised or prejudiced. Pl's Resp., pp. 6-8 [Doc. 35 at 12-14]. Also telling is that they do they seek a Rule 56(f) continuance. Plaintiffs can hardly ***argue*** they were prejudiced by "unfair surprise," because Defendants pled, as plain as day, the MCA Exemption affirmative defense in their first responsive pleading to Plaintiffs' Amended Complaint. (Doc. 24).[1] If Plaintiffs truly desired a more definite statement of Defendants' MCA exemption defense, they could have surely sought such relief before the summary judgment stage.

The primary case relied upon by Plaintiffs is clearly distinguishable from the facts in this matter. In *Pugh*, the Fifth Circuit Court of Appeals determined that the defendant waived its affirmative defense that was raised, ***for the first time***, in a motion for summary judgment. 530 F.2d at 96. In support of its holding, the Court stated:

> When the defendant has waived his affirmative defense by failing to allege it in his answer, or have it included in a pre-trial order of the district court that supersedes the pleadings, he cannot revive the defense in a memorandum in support of a motion for summary judgment. We hold that appellant waived his [affirmative defense] by failing to affirmatively set forth this argument in a responsive pleading.

*Id.* (internal citations omitted). Here, Defendants raised the MCA Exemption as an affirmative defense on December 28, 2011, nearly eight (8) months before Plaintiffs challenged the

---

[1]    Also, the parties specifically discussed the MCA exemption defense during settlement discussions ***months*** before the end of the discovery period, and Defendants' motion for summary judgment. Without describing the details of such discussions, which Defendants can submit to the Court *in camera* if needed, Defendants offer the foregoing fact to refute Plaintiffs' implied contention of delay and surprise. *See* Fed. R. Evid. 408; *WordPerfect Corp. v. Financial Services Marketing Corp.*, 85 F.3d 619, 1996 WL 254830 at *4 (5th Cir. April 15, 1996).

4

sufficiency of the defense.  (Doc. 24).  Therefore, for the foregoing reasons, the Court should

disregard Plaintiffs' request to strike Defendants' MCA Exemption affirmative defense.

**B.      THE MCA EXEMPTION SHOULD BE FAIRLY CONSTRUED**

In their Response, Plaintiffs argue that "all FLSA exemptions must be narrowly

construed." *See* Pl.'s Resp., p. 8 [Doc. 35, at 14].  This is not the correct standard to apply when

interpreting an FLSA exemption that has been properly defined and delimited by the regulations

of governing agencies.   When governing agencies have properly defined and delimited a

statutory exemption, the Court must <u>fairly</u> (not narrowly) construe such exemption.  *Belt v.*

*EmCare, Inc.*, 444 F.3d 403, 409 (5th Cir. 2006).  As the Fifth Circuit explained in *EmCare*, the

U.S. Supreme Court, in *Arnold v. Ben Kanowsky, Inc.* 361 U.S. 388 (1960), applied its cannon of

strict construction to the FLSA's ambiguous statutory language because there were no

Department of Labor ("DOL") regulatory interpretations of the statutory exemptions identified in

Section 213 of the FLSA at that time.  *EmCare*, 444 F.3d at 409.

Since the Supreme Court's decision in *Arnold*, the DOL, pursuant to its authority

expressly set forth in Section 213 of the FLSA, defined and delimited the exemptions at issue

through its regulations.  *See* 29 C.F.R. § 782.2.   Consequently, it is "inappropriate to apply a

cannon of strict (as opposed to fair) construction to the [DOL exemption regulations]."  *Id.*; *see*

*also Heidingsfelder v. Burk Brokerage, LLC*, 2010 WL 4364599 at *4 (E.D.La. Oct. 24,

2010)(*citing EmCare*, the *Heidingsfelder* court rejected the "narrowly construed" standard in

analyzing exemptions because the U.S. Supreme Court applied such standard, in the context of

the FLSA's retail establishment exemption, before the DOL defined and delimited exemptions);

*Hood v. Mercy Healthcare Arizona*, 23 F.Supp.2d 1125, 1129 (D.Ariz. 1997)(explaining narrow

construction rule does not apply to Department of Labor's FLSA exemption regulations).

Because the DOL and Department Transportation ("DOT") have properly defined and delimited

the MCA exemption, Defendants' MCA Exemption affirmative defense should be fairly construed.

## C.   PLAINTIFFS ARE EXEMPT FROM OVERTIME UNDER THE MCA EXEMPTION

In their Response, Plaintiffs argue "neither NOYPI, Inc. or Pioneer Contract Services, Inc. are subject to regulation of the Secretary of Transportation. In fact, NOYPI, Inc. is not even registered as a motor carrier with the Federal Motor Carrier Safety Administration...these facts alone are reason enough to deny summary judgment." *See* Pl's. Resp., p. 9 [Doc. 35, at 15]. However, Plaintiffs have misstated the appropriate standard to determine whether the MCA Exemption applies.

The Fifth Circuit Court of Appeals has explained that "the Secretary [of Transportation] need only possess the ***power*** to regulate the employees at issue; it need not actually exercise that power for the MCA to apply." *Songer v. Dillon Resources, Inc.*, 618 F.3d 467, 472 (5th Cir. 2010)(*citing Barefoot v. Mid-America Dairymen, Inc.*, 16 F.3d 1216 (5th Cir. 1994))(internal citations omitted)(emphasis added). *See also Levinson v. Spector Motor Serv.,* 330 U.S. 649, 678 (1947)("It is not necessary, as a condition precedent, to find that the [DOT] has exercised, or should exercise, such power by actually establishing qualifications and maximum hours of service with respect to loaders in general, corresponding to those established for drivers in general. The existence of the power is enough."); *Southland Gasoline Co. v. Bayley*, 319 U.S. 44, 47 (1943)("Section 13(b)(1) exempts from the maximum hour limitation of the Fair Labor Standards Act those employees over whom the [DOT] 'has power to' prescribe maximum hours of service."). Accordingly, it is not determinative whether an employer asserting the MCA Exemption has registered with the Federal Motor Carrier Safety Administration; on the contrary, the Secretary of Transportation need only possess the "power" to regulate the employer,

6

regardless of any registration.  *See Collins v. Heritage Wine Cellars, Ltd.*, 2008 WL 5423550 at *9, n.5 (N.D.Ill. Dec. 29, 2008)("Court finds unpersuasive Plaintiffs' contention that Defendants' failure to register with the Department of Transportation is subjective evidence that the Defendants themselves did not believe the exemption at issue was applicable. The question is not whether Heritage intended to be governed by the Department of Transportation or is in fact in compliance with Department of Transportation regulations, but rather whether Heritage's activities fall within the motor carrier practices over which the Department of Transportation has power and authority").

According to the DOL's  regulations interpreting the MCA Exemption, the Secretary of Transportation ("Secretary") has the power to "establish qualifications and maximum hours of service" over those employees who:

(1)    Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to [the Secretary of Transportation's] jurisdiction under section 204 of the Motor Carrier Act, and

(2)    engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

29 C.F.R. §  782.2(a)(emphasis added).  As detailed below, and in Defendants' Motion for Summary Judgment, the Secretary had the power to regulate NOYPI and its employees; thus, Plaintiffs are not entitled to overtime wages pursuant to the MCA Exemption to the FLSA.

**1.    Plaintiffs were employed by a motor carrier subject to the Secretary of Transportation's jurisdiction.**

The Secretary of Transportation has jurisdiction "over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier…between a place in…a State and a place in another State…"  49 U.S.C.A. § 13501.  Such transportation must be provided by a "commercial motor vehicle,"

7

which has been defined as: "a self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle…has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater…" 49 U.S.C. § 31132; *see also Garza v. Smith Int'l, Inc.*, 2011 WL 835820, *3 (S.D. Tex. March 7, 2011)(*citing Glanville v. Dupar, Inc.*, 2009 WL 3255292, *4 (S.D. Tex. Sept. 25, 2009); *Brooks v. Halsted Comm'ns Ltd.*, 620 F.Supp.2d 193, 197–98 (D. Mass. 2009)).

In its capacity as a moving services company, NOYPI was a motor carrier operating commercial motor vehicles in interstate commerce. NOYPI is based in Houston, Texas; however, as confirmed by the Declaration of Raul Sususco ("Sususco"), the Company provides moving services between Texas and other states, including Louisiana and Florida. (Def. App. 03, ¶ 6); (Def. App. 08 – 29). Summary judgment evidence submitted by Defendants clearly illustrates the existence of interstate routes handled by NOYPI during the relevant time period. (Def. App. 03, ¶ 6); (Def. App. 08 – 38). Specifically, the evidence shows NOYPI performed fourteen (14) trips to and from Louisiana during the relevant time period. (*Id.*). Additionally, NOYPI transported property by a fleet of motor vehicles, all with a Gross Vehicle Weight Rating ("GVWR") in excess of 10,001 pounds. (Def. App. 03, ¶ 7); (Def. App. 31). As demonstrated by the Declaration of Sussosco, along with documents identifying NOYPI's interstate routes, employees transported property between states using commercial motor vehicles in furtherance of NOYPI's commercial enterprise. (Def. App. 03, ¶ 6); (Def. App. 08 – 29).

Because NOYPI provided interstate moving services using commercial motor vehicles, it satisfied the "motor carrier" criteria set forth in 49 U.S.C.A. § 13501(14). As the DOT acknowledged in a notice of interpretation through the Federal Highway Administration ("FHA") clarifying the extent of the Secretary's jurisdiction over motor carrier employees:

> [For an employee to fall under the Secretary of Transportation's jurisdiction]…the carrier must be shown to have engaged in interstate commerce within a reasonable period of time prior to the time at which jurisdiction is in question. The carrier's involvement in interstate commerce must be established by some concrete evidence such as an actual trip in interstate commerce or proof, in the case of a "for hire" carrier, that interstate business has been solicited.

46 Fed.Reg. 37,902. Accordingly, the Secretary had the power to regulate NOYPI. This is true even if NOYPI was infrequently retained for interstate trips. The success or failure of NOYPI's efforts to solicit interstate business is neither controlling nor dispositive. *See Brennan v. Schwerman Trucking Co. of Virginia, Inc.*, 540 F.2d 1200, 1203 (4th Cir. 1976)(*citing Starrett v. Bruce*, 391 F.2d 320, 323 (10th Cir. 1968)("We are…mindful of the fact that it is not simply those carriers who actually obtain interstate business that are subject to the jurisdiction of the Secretary of Transportation"). For the reasons stated above, NOYPI and defendants Pioneer and Fritcher[2] are motor carriers subject to the Secretary of Transportation's jurisdiction; therefore, Defendants satisfy the first element of the MCA exemption.[3]

### 2. Plaintiffs were engaged in activities that directly affected the operational safety of commercial motor vehicles.

The second issue to resolve in the MCA Exemption analysis is whether Plaintiffs engaged in activities that directly affected the safe operation of motor vehicles in interstate commerce. *See* 29 C.F.R. § 782.2(a). Plaintiffs have failed to raise a genuine material fact issue regarding this element.

---

[2]     The MCA Exemption also applies to Defendants Pioneer and Fritcher. Plaintiffs argue NOYPI, Pioneer, Fritcher and Sususco were joint employers of Plaintiffs. (Doc. 23, ¶ 20). The existence of a joint employer relationship extends the MCA Exemption to all Defendants. *Songer*, 618 F.3d at 472. As the Fifth Circuit Court of Appeals recognized in *Songer*, "a staff leasing company who provides employees for a motor carrier and operates as a joint employer with the carrier meets the requirements of [the MCA exemption]." *Id*. "Refusing to extend the MCA exemption…would…facilitate what Congress sought to prohibit – circumvention of the Secretary's regulatory authority." *Id* at 473.

[3]     Notably, Plaintiffs concede that NOYPI utilized commercial vehicles. (*See* Doc. 35, 9 – 11).

### a.    The interstate commerce requirement of the MCA Exemption.

In their Response, Plaintiffs argue that "there is no evidence that Plaintiff and Opt-In Plaintiff loaded vehicles engaged in interstate or foreign commerce."  *See* Pl's. Resp., p. 11 [Doc. 35, at 17].  Again, Plaintiffs misstate the appropriate standard to determine whether they are subject to the MCA Exemption.  The Fifth Circuit, interpreting the DOL's regulations, held that "if the employee's job duties are such that he is (or...is likely to be) called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities of a [loader], he comes within the MCA exemption."  *Songer*, 618 F.3d at 474 (citing 29 C.F.R. § 782.2(b)(3))(internal quotations omitted)(emphasis added).  *See also Allen v. Coil Tubing Services, L.L.C.*, 846 F. Supp. 2d 678, 702 (S.D. Tex. 2012)("The pertinent inquiry is whether the employer establishes that the employee can be <u>reasonably expected</u> to engage or to be asked to engage in safety-affecting duties in connection with interstate transport of property in the ordinary course of his work, at least from time to time.")(internal quotations omitted)(emphasis added).

Here, the Declaration of Sususco and Defendants' summary judgment evidence confirmed that NOYPI provided the interstate transportation of property.  (Def. App. 03, ¶ 6); (Def. App. 08 – 29).  Sususco also affirmed that Plaintiffs were indiscriminately assigned as Movers (*i.e.* Loaders) to specific projects depending on the needs of a particular customer and availability of the employee.  (Def. App. 04, ¶ 10).  Accordingly, Plaintiffs were equally likely to be assigned to projects involving the interstate transportation of property as other NOYPI employees and did, in fact, receive assignments involving interstate transportation of property. (Def. App. 05, ¶¶ 14 & 15).  Plaintiffs' evidence fails to raise a genuine issue of material fact on this element.

      **b.**     **The "directly affected safe operations" requirement of the MCA Exemption.**

Plaintiffs also challenge the nature of the work they performed as Movers: "Defendants simply overstate Plaintiff and Opt-In Plaintiff's roles in loading and unloading office furniture and equipment."  *See* Pl's. Resp., p. 10 [Doc. 35, at 16].  In support of this contention, Plaintiffs argue that "merely furnishing physical assistance does not qualify [as] an activity affecting safety of a commercial vehicle."  (*Id.*).  However, Plaintiffs' pleadings and summary judgment evidence paint a different picture entirely.  In their Amended Complaint, Plaintiffs state, "[m]overs and supervisors, including Lucas, are responsible for performing a variety of tasks, including loading, unloading, lifting and moving."  (Doc. 23, ¶ 21).  Plaintiff Max Lucas also testified as follows in his Declaration:

> I was responsible for moving office furniture and equipment from the El Paso Energy Corporation office at 1001 Louisiana Street to other office space leased by El Paso Energy Corporation in downtown Houston.  In those cases, I would load the office furniture and equipment into trucks owned by Pioneer Contract Services.  I would also unload those trucks.  I also supervised people doing these same tasks.

(Doc. 35-1, ¶ 6).  Similarly, Plaintiff Uranui Lucas stated:

> I was responsible for moving office furniture and equipment from the El Paso Energy Corporation office at 1001 Louisiana Street to other office space leased by El Paso Corporation in downtown Houston.  In those cases, I would load office furniture and equipment into trucks owned by Pioneer Contract Services, Inc.  I would also unload those trucks.

(Doc. 35-2, ¶ 6).

The foregoing testimony, when compared to Defendants' summary judgment testimony, demonstrates Plaintiffs concede they performed activities withing the scope of the MCA exemption.  Notably, Max Lucas admits that he <u>supervised</u> people loading and unloading trucks. Both Plaintiffs also admit they loaded and unloaded Defendants' truck.  (Doc. 35-1, ¶ 6); (Doc. 35-2, ¶ 6).  Moreover, Plaintiffs do not dispute it was their responsibility to use their discretion

and judgment to build a balanced and safe load while loading trucks.  Recall, Raul Sususco

testified that Plaintiffs were responsible for building a balanced and safe load.  (Def. App. 05,

¶¶ 9, 4 & 15)("[Plaintiffs were] expected to use [their] discretion and judgment to plan and

build a balanced load.  In addition, [Plaintiffs] had the responsibility to place, distribute, and

secure customer property in a manner to ensure the safe operation on interstate highways.").  As

the U.S. Supreme Court noted in *Levinson*:

> [i]t is enough…that a substantial part of the petitioner's activities consisted of the
> doing or immediate direction of the very kind of activities of a loader that are
> described by the [DOT] as directly affecting safety of operation. The petitioner's
> activities thus affected safety of operation, although it does not appear what
> fraction of his time was spent in activities affecting safety of operation.  As a
> consequence, he comes within the power of the [DOT] to establish qualifications
> and maximum hours of service with respect to him and, by the express terms of s
> 13(b)(1) of the Fair Labor Standards Act he is excluded, automatically, from the
> benefits of § 7 of that Act.

330 U.S. at 681; *see also Troutt v. Stavola Bros., Inc.*, 107 F.3d 1104, 1107 (4th Cir.

1997)("[Loaders] need not devote all or even the majority of their time to safety-affecting

activities in order to be covered by the Motor Carrier Act.  Thus it is enough that a 'loader'

devote a 'substantial part' of his time to activities affecting safety of operation.")(internal

citations omitted).

Plaintiffs' evidence—their bald assertion that they were "merely furnishing physical

assistance" while loading and unloading materials on Defendants' trucks—fails to refute

Defendants' evidence demonstrating they spent a substantial part of their work time using their

discretion to build safe and balanced loads.[4]  Consequently, Plaintiffs fail to raise a material and

---

[4]        "[A]n employee of a carrier subject to the MCA whose duties include, among other things, the proper
loading of his employer's motor vehicles so that they may be safely operated on the highways of the country.  A
loader's duties will usually also include unloading and the transfer of freight between the vehicles and the
warehouse, but he engages, as a "loader," in work directly affecting "safety of operation" so long as he has
responsibility, when such motor vehicles are being loaded, for exercising judgment and discretion in planning and
building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe
operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized."  *Allen v. Coil*

genuine fact issue.  *See Kansa Reinsurance Co. v. Congressional Mortg. Corp.*, 20 F3d 1362, 1371 (5th Cir. 1994)(to defeat summary judgment, plaintiffs must produce significant, probative evidence demonstrating the existence of a triable dispute on at least one element of Defendants' defense); *Reese v. Anderson*, 926 F.2d 494, 499 (5th Cir. 1991)(affidavit filed by plaintiff that merely amounted to general denial did not raise genuine issue of material fact).  Accordingly, having failed to raise a genuine issue of material fact, Plaintiffs' claims for the payment of overtime wages should be dismissed, as a matter of law.

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs were subject to the MCA Exemption because:  (1) NOYPI was a "motor carrier;" and, (2) Plaintiffs spent a substantial part of their work time engaging in activities that directly affected the operational safety of motor vehicles in interstate commerce and/or could have been reasonably called-upon to engage in activities that directly affected the operational safety of motor vehicles in interstate commerce.

WHEREFORE, Defendants respectfully pray that judgment be entered dismissing all of Plaintiffs claims against Defendants; that Defendants be dismissed, with prejudice, from this case; that Plaintiffs take nothing against Defendants; and, that Defendants recover all costs of suit and reasonable attorneys' fees.  Defendants respectfully pray for such other and further relief to which they are entitled.

---

*Tubing Services, L.L.C.*, 2012 WL 125989, *16 (S.D.Tex. 2012)(*citing* 29 C.F.R. § 782.5(a))(internal quotations omitted).

Respectfully Submitted,

COZEN O'CONNOR, P.C.

/s/ Charles H. Wilson
Southern District Bar No. 34581
One Houston Center
1221 McKinney, Suite 2900
Houston, Texas  77010
Telephone:  832.214.3900
Facsimile:  832.214.3905
Email:  cwilson@cozen.com

**ATTORNEYS FOR DEFENDANT**

**OF COUNSEL**

Daniel J. Schuch
Southern District Bar No. 890703
COZEN O'CONNOR, P.C.
One Houston Center
1221 McKinney, Suite 2900
Houston, Texas 77010
Telephone: 832.214.3900
Facsimile: 832.214.3905
Email:  dschuch@cozen.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of August 2012, a true and complete copy of the foregoing document was served, via the Court's CM/ECF system, upon the individuals on the below service list.

> Melissa Moore
> Curt Hesse
> Lyric Center
> 440 Louisiana Street
> Suite 675
> Houston, Texas  77002

By:    /s/ Daniel J. Schuch
      Daniel J. Schuch