IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MAX LUCAS, Individually and on   §
Behalf of All Others Similarly   §
Situated,                        §
                                 §
            Plaintiffs,          §
                                 §
v.                               §        CIVIL ACTION NO. H-11-1940
                                 §
NOYPI, INC.; PIONEER CONTRACT    §
SERVICES, INC.; SUSAN SUSUSCO;   §
and ED FRITCHER,                 §
                                 §
            Defendants.          §

## MEMORANDUM OPINION AND ORDER

Pending before the court is Defendants' Motion for Summary Judgment and Memorandum of Authorities ("Defendants' Motion for Summary Judgment") (Docket Entry No. 31).   For the reasons discussed below, Defendants' Motion for Summary Judgment will be granted.

## I.  Factual and Procedural Background

### A.  Defendants' Businesses and Plaintiffs' Employment

During the time relevant to this lawsuit, NOYPI, Inc. ("NOYPI") was in the commercial moving business, i.e., it was retained by customers to move property between locations.[1]

---

[1] Defendants' Appendix to Its Motion for Summary Judgment and Memorandum of Authorities ("Defendants' Appendix"), Docket Entry No. 32, Ex. 1, Declaration of Raul Sususco, p. 3 ¶ 4.   NOYPI concluded its operations in 2011. Id. ¶ 5.

Defendant Susan Sususco ("Sususco") was NOYPI's President.[2]
Pioneer Contract Services, Inc. ("Pioneer") was also in the
business of providing commercial relocation services.[3] Defendant
Ed Fritcher was Pioneer's President.[4] On August 11, 2008, NOYPI
and Pioneer entered into a subcontract agreement, pursuant to which
NOYPI provided labor to Pioneer.[5]

Plaintiffs Max Lucas and Uranui Lucas (collectively,
"Plaintiffs") were employed by NOYPI as movers.[6] Max Lucas was
employed from April 2008 to April 2011, and Uranui Lucas was
employed from December 2007 to April 2011.[7] Plaintiffs' work
involved moving furniture and office equipment from one office to
another, which included loading that furniture and equipment into

---

[2]Defendants' Motion for Summary Judgment, Docket Entry No. 31,
p. 6.

[3]Defendants' Appendix, Docket Entry No. 32, Ex. 2, Declaration
of Roger Fritcher, p. 41 ¶ 5.

[4]Id. at 40 ¶ 2.

[5]Defendants' Appendix, Docket Entry No. 32, pp. 33-38.

[6]Plaintiff's Response in Opposition to Defendants' Motion for
Summary Judgment ("Response"), Docket Entry No. 35, Ex. A,
Declaration of Max Lucas,¶ 3; id., Ex. B, Declaration of Uranui
"George" Lucas, ¶ 3.

[7]Response, Docket Entry No. 35, Ex. A, Declaration of Max
Lucas, ¶ 3; id., Ex. B, Declaration of Uranui "George" Lucas, ¶ 3.

trucks.[8]  During that time they also loaded and unloaded vehicles owned by Pioneer.[9]

## B.    Procedural Background

Plaintiffs[10] commenced this action on May 20, 2011, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, based on failure to pay overtime wages.[11]  Defendants NOYPI, Pioneer, Sususco, and Fritcher (collectively, "Defendants") initially moved to dismiss and, in the alternative, for a more definite statement.[12]  The court denied the motion to dismiss, but granted the motion for a more definite statement.[13]  Plaintiffs filed their amended complaint on December 14, 2011,[14] and Defendants' filed their answer on December 28, 2011.[15]

_____

[8]Response, Docket Entry No. 35, Ex. A, Declaration of Max Lucas, ¶ 6; id., Ex. B, Declaration of Uranui "George" Lucas, ¶ 6; Defendants' Appendix, Docket Entry No. 32, Ex. 1, Declaration of Raul Sususco, p. 5, ¶¶ 14-15.

[9]Response, Docket Entry No. 35, Ex. A, Declaration of Max Lucas, ¶ 6; id., Ex. B, Declaration of Uranui "George" Lucas, ¶ 6.

[10]Max Lucas consented to becoming a party plaintiff pursuant to 29 U.S.C. § 216(b).  Notice of Consent of Max Lucas, Docket Entry No. 3.  Uranui Lucas also consented to becoming a party plaintiff pursuant to 29 U.S.C. § 216(b).  Notice of Consent of Uranui Lucas, Docket Entry No. 4.

[11]Plaintiffs' Original Complaint, Docket Entry No. 1.

[12]Defendants' Motion to Dismiss or for More Definite Statement and Authorities in Support, Docket Entry No. 15.

[13]Hearing Minutes and Order, Docket Entry No. 20.

[14]Plaintiff's First Amended Complaint, Docket Entry No. 23.

[15]Defendants' Answer to Plaintiff's First Amended Complaint ("Answer"), Docket Entry No. 24.

Defendants now move for summary judgment, asserting that they were exempt from paying overtime wages under 29 U.S.C. § 213(b)(1), commonly referred to as the Motor Carrier Act ("MCA") exemption.[16] Plaintiffs argue that the exemption does not apply.[17]

## II.  **Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure mandates summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under governing law," and disputes over such facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986).

A party moving for summary judgment "bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." Lincoln Gen. Ins. Co. v. Reyna, 401 F.3d 347, 349 (5th Cir. 2005). Where, as here, a defendant moves for summary judgment based on an affirmative defense, the defendant "'must establish each element of

---

[16]Defendants' Motion for Summary Judgment, Docket Entry No. 31, pp. 9-11; Reply in Support of Defendants' Motion for Summary Judgment ("Reply in Support"), Docket Entry No. 36.

[17]Response, Docket Entry No. 35.

that defense as a matter of law.'" Shanks v. AlliedSignal, Inc., 169 F.3d 988, 992 (5th Cir. 1999) (quoting Crescent Towing & Salvage Co., Inc. v. M/V Anax, 40 F.3d 741, 744 (5th Cir. 1994)).

Once the moving party has carried this burden, its opponent must show that specific facts exist over which there is a genuine issue for trial. Reyna, 401 F.3d at 349 (citing Celotex, 106 S. Ct. at 2553-54). The nonmovant may not rest upon mere allegations in the pleadings to make such a showing. Reyna, 401 F.3d at 350. To create a genuine fact issue, more than some "metaphysical doubt as to the material facts" is required. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

The parties may support the existence or nonexistence of a genuine fact issue by either (1) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, admissions, and interrogatory answers, or (2) showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)-(B). In reviewing this evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2110 (2000).

-5-

### III.  Motor Carrier Act Exemption

**A.  Affirmative Defense Sufficiently Pleaded**

Before considering the applicability of the MCA exemption, the court addresses Plaintiffs' argument that Defendants did not properly plead the MCA exemption as an affirmative defense in their Answer.[18]  Under the Federal Rules of Civil Procedure, "a party must affirmatively state any . . . affirmative defense."  Fed. R. Civ. Pro. 8(c); see Lebouef v. Island Operating Co., Inc., 342 Fed. Appx. 983, 984 (5th Cir. 2009) ("[T]he defendant must provide at least some information that alerts the plaintiff to what the alleged problem is.").  Defendants included in their answer the following statement:  "Defendants affirmatively plead that they were not required to pay overtime to Plaintiff because his position was subject to an exemption to the payment of overtime under FLSA, including, but not limited to, the motor carrier exemption in Section 13(b)(1) of the FLSA."[19]  The court concludes that this pleading was sufficient to raise the affirmative defense on which Defendants' Motion for Summary Judgment is based.  Moreover, even a technical failure to comply precisely with Rule 8(c) may be excused so long as "the affirmative defense is raised in the trial court in a manner that does not result in unfair surprise." Solomon v. Spalitta, 2012 WL 3100751, at *2 (5th Cir. July 31,

---

[18]Response, Docket Entry No. 35, pp. 7-8.

[19]Answer, Docket Entry No. 24, pp. 2-3.

2012) (quoting Rogers v. McDorman, 521 F.3d 381, 385 (5th Cir. 2008)). At the heart of Rule 8(c) is the concern that a "defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense." Rogers, 521 F.3d at 385. In this case Plaintiffs cannot plausibly contend that they were ambushed by the motion for summary judgment in light of Defendants' assertion of the MCA exemption in their answer.

## B.   Statutory and Regulatory Scheme

The FLSA requires employers to compensate each employee at one and one-half times the employee's regular rate for all hours worked in excess of forty per week. 29 U.S.C. § 207(a)(1). But the statute also specifically exempts certain employers and their employees from this overtime requirement. See id. § 213. These exemptions are construed narrowly against the employer,[20] and the employer bears the burden to establish a claimed exemption. Songer v. Dillon Res., Inc., 618 F.3d 467, 471 (5th Cir. 2010); Barefoot v. Mid-America Dairymen, Inc., 1994 WL 57686, at *2 (5th Cir. Feb. 18, 1994); Smith v. City of Jackson, 954 F.2d 296, 298 (5th Cir. 1992).

---

[20]The court rejects Defendants' assertion that FLSA exemptions must be construed fairly instead of narrowly. Defendants' reliance on Belt v. EmCare, Inc., 444 F.3d 403 (5th Cir. 2006), is misplaced. In EmCare the Fifth Circuit held that *regulatory* exemptions under the FLSA should be construed fairly, but expressly reaffirmed that *statutory* exemptions under the FLSA are construed narrowly. See id. at 409. A statutory exemption is at issue here.

In this case Defendants assert the MCA exemption, which provides that the FLSA's overtime requirement does not apply to "any employee with respect to whom the Secretary of Transportation [("Secretary")] has power to establish qualifications and maximum hours of service pursuant to the provisions of [49 U.S.C. § 31502]." 29 U.S.C. § 213(b)(1). Under 49 U.S.C. § 31502, the Secretary has the power to prescribe requirements for the "qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier." 49 U.S.C. § 31502(b). It is well-established that the Secretary "'need only possess the power to regulate the employees at issue; it need not actually exercise that power for the [MCA] exemption to apply.'" Songer, 618 F.3d at 472 (quoting Barefoot, 1994 WL 57686, at *2); see Klitze v. Steiner Corp., 110 F.3d 1465, 1469 (5th Cir. 1997) ("[T]he Secretary's decision not to exercise his regulatory authority over a category of carriers does not exempt them from his authority."). The FLSA only applies if the Secretary does not have power to establish qualifications and maximum hours of service. See Levinson v. Spector Motor Serv., 67 S. Ct. 931, 945 (1947).

The Department of Labor ("DOL") regulations enforcing the FLSA state that whether an employee is within the jurisdiction of the Secretary "depends both on the class to which his employer belongs and on the class of work involved in the employee's job." 29 C.F.R. § 782.2(a), quoted in Songer, 618 F.3d at 472. Accordingly, the exemption applies only to those classes of employees who

>(1)  [a]re employed by carriers whose transportation of passengers or property by motor vehicle is subject to [the Secretary's] jurisdiction under section 204 of the Motor Carrier Act [codified at 49 U.S.C. § 31502] . . . and
>
>(2)  engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

29 C.F.R. § 782.2(a), quoted in Songer, 618 F.3d at 472. Employers asserting the MCA exemption as an affirmative defense must show that both criteria are met. On June 6, 2008, Congress added an exception to this exemption, however, providing that an employee may be entitled to overtime compensation notwithstanding 29 U.S.C. § 213(b)(1) if he qualifies as a "covered employee." The analysis below is therefore separated into pre- and post-June 6, 2008, claims.

## C.   Application of the MCA Exemption:  Pre-June 6, 2008

### 1.   Carriers Subject to the Secretary's Jurisdiction

The first inquiry is whether Defendants are "carriers whose transportation of . . . property by motor vehicle is subject to" the Secretary's jurisdiction. See 29 C.F.R. § 782.2(a)(1). To be subject to the Secretary's jurisdiction, Defendants must be "motor carriers" engaged in "interstate commerce," as those terms are defined in the MCA.  See 49 U.S.C. §§ 13102(14), 13501(1), 13502(b)(1).

-9-

(a)  Motor Carriers

The definition of "motor carrier" was amended during the relevant periods of employment in this case.[21]  Prior to June 6, 2008, a "motor carrier" was defined as "a person providing commercial motor vehicle (as defined in section 31132) transportation for compensation."  49 U.S.C. § 13102(14) (2006) (amended June 6, 2008).  The term "commercial motor vehicle" means a "self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle has a gross vehicle weight rating [("GVWR")] . . . of at least 10,001 pounds."  49 U.S.C. § 31132(1).  Under this definition of "motor carrier," which applies to employment existing before June 6, 2008, employers who did not use commercial motor vehicles were not exempt from the overtime requirement.  See Allen v. Coil Tubing Servs., L.L.C., 846 F. Supp. 2d 678, 692 (S.D. Tex. 2012).

On June 6, 2008, Congress passed the SAFETEA-LU Technical Corrections Act of 2008 ("TCA"), Pub. L. 110-244, 122 Stat. 1572, which amended the definition of "motor carrier" by removing the

---

[21]The relevant periods of employment in this case range from December 2007 to April 2011.  See Response, Docket Entry No. 35, Ex. A, Declaration of Max Lucas, ¶ 3 (April 2008 to April 2011); id., Ex. B, Declaration of Uranui "George" Lucas, ¶ 3 (December 2007 to April 2011).  While Defendants assert that both Plaintiffs were hired in 2008, Defendants' Appendix, Docket Entry No. 32, Declaration of Raul Sususco, p. 05 ¶¶ 14-15, the court must accept Plaintiffs' version of the facts.  See Alexander v. Eeds, 392 F.3d 138, 142 (5th Cir. 2004) (factual controversies are resolved in favor of nonmovant "when both parties have submitted evidence of contradictory facts") (internal quotations omitted).

-10-

modifier "commercial" from before "motor vehicle." Id. § 305, 122 Stat. 1572, 1620. Effective June 6, 2008, a "motor carrier" is defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). This change expanded the scope of the MCA exemption to cover all employers that operated "motor vehicles" of any weight. See Allen, 846 F. Supp. 2d at 692.

Defendants have met their burden to show that NOYPI and Pioneer qualified as motor carriers at all relevant times to this action. First, Defendants have provided competent summary judgment evidence from NOYPI and Pioneer that both companies maintained fleets of vehicles with GVWRs in excess of 10,0001 pounds.[22] Defendants also attached a picture of a placard from one of NOYPI's trucks indicating a GVWR of 25,500 pounds.[23] In their response to Defendants' motion, Plaintiffs failed to produce any evidence showing that either NOYPI or Pioneer did not operate as a "motor carrier" within the MCA. Accordingly, there is no genuine issue of material fact that both NOYPI and Pioneer qualify as "motor carriers" under the pre- and post-June 6, 2008, definitions.

(b)  Engaged in Interstate Commerce

To be subject to the Secretary's jurisdiction under the MCA, a motor carrier must be engaged in "interstate commerce." The MCA

---

[22]Defendants' Appendix, Docket Entry No. 32, Ex. 1, Declaration of Raul Sususco, p. 3 ¶ 7; id., Ex. 2, Declaration of Roger Fritcher, p. 41 ¶ 7.

[23]Defendants' Appendix, Docket Entry No. 32, Ex. 1, Declaration of Raul Sususco, Ex. B, p. 31.

defines the term, in relevant part, as commerce "between a place in . . . a State and a place in another State." 49 U.S.C. § 13501(1)(A).   The Fifth Circuit, quoting from a notice of interpretation issued by the DOT, has stated that

> the carrier must be shown to have engaged in interstate commerce within a reasonable period of time prior to the time at which jurisdiction is in question.  The carrier's involvement in interstate commerce must be established by some concrete evidence such as an actual trip in interstate commerce or proof . . . that interstate business had been solicited.

Reich v. American Driver Service, Inc., 33 F.3d 1153, 1156 (5th Cir. 1994) (quoting 46 Fed. Reg. 37,902, 37,903 (Dept. of Transp. July 23, 1981) (notice of interpretation)).

The court concludes that there is no genuine issue as to whether Defendants were motor carriers engaged in interstate commerce for purposes of the MCA.   The summary judgment record reveals that NOYPI actually participated in interstate commerce during the relevant periods of employment.   Work orders show that NOYPI performed work in Louisiana in June and December of 2009.[24] In addition, the declaration provided by NOYPI's manager states that NOYPI regularly provided commercial moving services in Texas, Louisiana, and Florida, and offered to provide moving services in other states as business opportunities arose.[25]   Plaintiffs have offered no evidence to refute these facts.   Plaintiffs contend,

---

[24]Id. at 8-29.

[25]Id., Ex. 1, Declaration of Raul Sususco, p. 3 ¶ 6.

however, that because NOYPI is not registered as a motor carrier with the Federal Motor Carrier Safety Administration, it is therefore not subject to the Secretary's jurisdiction.[26]  The court is not persuaded by this argument.  Plaintiffs offer no authority to support the contention that such registration is required to bring a motor carrier within the Secretary's jurisdiction.  Indeed, it is the existence of the Secretary's power to exercise jurisdiction, not the actual exercise of that power, that is central to the MCA exemption.  The fact that NOYPI was not registered has no bearing on the Secretary's power over it under the MCA.  The court concludes that NOYPI was continuously engaged in interstate commerce throughout the relevant periods in this case.

Pioneer also qualifies as a motor carrier engaged in interstate commerce.  Pioneer's Vice-President stated in a declaration that Pioneer provided services in Texas and across state lines, and offered to provide services in other states as business opportunities arose.[27]  That evidence was not refuted by Plaintiffs.  Furthermore, the Fifth Circuit has recognized that an employer operating as a joint employer with a motor carrier engaged in interstate commerce meets the requirements of the MCA exemption.  See Songer, 618 F.3d at 472.  In other words, where the MCA

_____

[26]Response, Docket Entry No. 35, p. 9.

[27]Defendants' Appendix, Docket Entry No. 32, Ex. 2, Declaration of Roger Fritcher, p. 41 ¶ 6.

exemption applies to one employer the existence of a joint employer relationship extends the exemption to all joint employers in a suit brought under 29 U.S.C. § 207.  DOL regulations contemplate that a single individual may be the employee of two or more employers at the same time.  29 C.F.R. § 791.2(a).  The regulations provide that where

> the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the [MCA].

Id.  Here, the subcontract agreement between NOYPI and Pioneer provided for joint responsibility for the workers and also clearly delineated each party's responsibility,[28] such that employment by NOYPI was "not completely disassociated from" employment by Pioneer.  For example, Pioneer assigned tasks to workers hired by NOYPI, and the workers then carried out those tasks.[29]  Moreover, Plaintiffs' descriptions of their jobs do not include distinctions between employment for NOYPI and employment for Pioneer.[30]  Because Pioneer entered into the agreement with NOYPI on August 11, 2008,[31] Pioneer and NOYPI were joint employers for all periods of

_____

[28]Id., Ex. C, Subcontract Agreement, pp. 33-38.

[29]Id., Ex. 1, Declaration of Raul Sususco, p. 3 ¶ 13.

[30]Response, Docket Entry No. 35, Ex. A, Declaration of Max Lucas, ¶ 3; id., Ex. B, Declaration of Uranui "George" Lucas, ¶ 3.

[31]Defendants' Appendix, Docket Entry No. 32, Ex. C, Subcontract Agreement, p. 33.

employment existing on and after August 11, 2008.  Accordingly,
there is no genuine issue of material fact that the first
requirement of the exemption -- i.e., that Plaintiffs work for
motor carriers engaged in interstate commerce -- is satisfied.

>    2.   Employees' Activities Affecting Safety in Interstate
>         Transportation

Having concluded that Defendants are "motor carriers," the
court must determine if Plaintiffs were employed in positions that
affect highway safety in the transportation of property in
interstate commerce.  See 29 C.F.R. § 782.2(a).  It is well-settled
that "it is the character of the activities rather than the
proportion of either the employee's time or of his activities that
determines the actual need for the [Secretary's] power to establish
reasonable requirements with respect to qualifications, maximum
hours of service, safety of operation and equipment."  Morris v.
McComb, 68 S. Ct. 131, 135-36 (1947).  The exemption applies to
four classes of employees -- (1) drivers, (2) driver's helpers,
(3) loaders, and (4) mechanics -- if their work directly affects
the safety of the operation of motor vehicles in transportation in
interstate commerce.  29 C.F.R. § 782.2(b)(1).  Defendants argue
that Plaintiffs were employed in positions affecting transportation
safety because they were employed as loaders.[32]  Thus, the exemption
applies only if each Plaintiff's work (1) was defined as that of a

---

[32]Motion for Summary Judgment, Docket Entry No. 31, p. 16.

"loader," and (2) directly affected the safety of operation of motor vehicles in interstate commerce within the meaning of the MCA.  29 C.F.R. § 782.5(b).

       (a)  Loaders

For purposes of the MCA exemption a "loader" is an employee of a carrier subject to the Secretary's jurisdiction "whose duties include, among other things, the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country."  29 C.F.R. § 782.5(a).  A loader's duties

> will usually also include unloading and the transfer of freight between the vehicles and the warehouse, but he engages, as a "loader," in work directly affecting "safety of operation" so long as he has responsibility when such motor vehicles are being loaded, for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate . . . commerce will not be jeopardized.

Id.; see also Wirtz v. C & P Shoe Corp., 336 F.2d 21, 29 (5th Cir. 1964) ("[A loader] share[s] in the exercise of discretion as to the manner in which the loading [is] done.").  An employee need not devote all or even the majority of his time to safety-affecting activities to qualify as a loader.  Levinson, 67 S. Ct. at 944. Instead, "it is enough that a loader devote a substantial part of his time to activities affecting the safety of operation."  Id. at 947.  But see Pyramid Motor Freight Corp. v. Ispass, 67 S. Ct. 954, 960 ("[T]he mere handling of freight at a terminal, before or after loading, or even the placing of certain articles of freight on a

motor carrier truck may form so trivial, casual or occasional part of an employee's activities, or his activities may relate only to such articles or to such limited handling of them, that his activities will not come within the kind of 'loading' which . . . affects safety of operation.").

It is undisputed that, as movers, Plaintiffs loaded motor vehicles as part of their employment. Plaintiffs contend, however, that they were "merely furnishing physical assistance" and therefore were not affecting transportation safety within the meaning of the MCA.[33]  Plaintiffs rely for support on the Fifth Circuit's decision in Wirtz, where the court held that workers who followed a simple "last out, first in" method of loading and unloading were not acting as loaders because of the utter lack of discretion involved in those activities.  Wirtz, 336 F.2d at 29. But the uncontradicted summary judgment evidence paints a different picture.  Both Plaintiffs stated that they loaded office furniture and equipment into trucks.[34]  Indeed, loading and unloading trucks was one of only three responsibilities that Plaintiffs addressed in their respective declarations.[35]  Max Lucas also stated that he was

---

[33]Response, Docket Entry No. 35, p. 16.

[34]Id., Ex. A, Declaration of Max Lucas, ¶ 6; id., Ex. B, Declaration of Uranui "George" Lucas, ¶ 6.

[35]Response, Docket Entry No. 35, Ex. A, Declaration of Max Lucas, ¶ 6; id., Ex. B, Declaration of George "Uranui" Lucas, ¶ 6. Plaintiffs also declared that they were responsible for moving furniture from office to office and for setting up conference rooms.  Id.

responsible for supervising the loading of trucks.[36]  Furthermore,
Plaintiffs do not dispute any of the evidence provided by
Defendants regarding these loading activities.  The evidence in the
summary judgment record reveals that Plaintiffs were responsible
for using their discretion to build a balanced and safe load by
placing and distributing property safely in the trucks.[37]  There is
no evidence that these loading activities were "so trivial, casual
or occasional" parts of their activities such that they could not
be classified as loaders.  See Ispass, 67 S. Ct. at 960.  The court
concludes that the evidence shows that Plaintiffs engaged in more
than mere physical assistance and were required to use their
discretion to ensure that the vehicles were safely loaded.  The
facts here stand in clear contrast to those of Wirtz.  Therefore,
there is no genuine issue of material fact as to Plaintiffs' status
as "loaders."

          (b)  Activities Involved in Interstate Transport

     Because Plaintiffs were employed in positions that affected
the operational safety of motor vehicles, the court must address
the question whether Plaintiffs' "activities directly affected
motor vehicle safety 'in the transport of property in interstate
commerce.'"  Songer, 618 F.3d at 473.  The pertinent inquiry is

_____

     [36]Id., Ex. A, Declaration of Max Lucas, ¶ 6.

     [37]Defendants' Appendix, Docket Entry No. 32, Ex. B, Declaration
of Raul Sususco, p. 5 ¶¶ 9, 14, 15.

whether the employer establishes that the employee can be "reasonably expected" to engage in or to be asked to engage in safety-affecting duties in connection with interstate transport of property "in the ordinary course of his work," at least "from time to time." Songer, 618 F.3d at 474; accord Reich, 33 F.3d at 1156; see 29 C.F.R. § 782.2(b)(3). If the employer can make such a showing, the employee comes within the MCA exemption "in all workweeks when he is employed at such job." 29 C.F.R. § 782.2(b)(3).

Loaders may be subject to the MCA exemption even if they did not personally participate in interstate commerce. See Morris, 68 S. Ct. at 136. In Morris the Supreme Court concluded that a group of drivers who collectively spent 4% of their time engaging in interstate commerce, and the remainder in intrastate commerce, were subject to the exemption. The Court reasoned that the interstate trips were a "natural, integral and apparently inseparable part" of the carrier's service because they were "shared indiscriminately" by the drivers and were "mingled with" the performance of other intrastate trips. Morris, 68 S. Ct. at 136. Notably, two out of the forty-three drivers in the group had never engaged in interstate commerce at all. Id. at 136; see also Brennan v. Schwerman Trucking Co., 540 F.2d 1200 (4th Cir. 1976) (all drivers exempt under MCA even though not all drove in interstate commerce). The Fifth Circuit in Songer relied on Morris to conclude that all workers were engaged in interstate commerce under the MCA even

though four of the twenty-one plaintiffs had never actually traveled across state lines. Songer, 618 F.3d at 475. The issue, therefore, is whether objectively there can be said to be a "reasonable expectation" that an interstate trip could be assigned to members of a group, not whether a particular employee subjectively thought he was likely to receive an interstate assignment.

The uncontradicted evidence provided by Defendants shows that, as discussed above, Defendants engaged in interstate commerce. Furthermore, employees such as Plaintiffs were expected, if asked, to travel within the state of Texas and across state lines to transport customer property.[38] Assignments for interstate trips were distributed indiscriminately.[39] Whether Plaintiffs actually performed work across state lines is disputed,[40] but what is undisputed is that Plaintiffs were reasonably expected to engage in interstate commerce if called upon. The evidence demonstrates that Plaintiffs could reasonably have been expected to engage in interstate commerce consistent with their loading duties. Accordingly, there is no genuine issue of material fact that

---

[38]Defendants' Appendix, Docket Entry No. 32, Ex. 1, Declaration of Raul Sususco, p. 5 ¶¶ 14-15.

[39]Id. at 3 ¶ 10.

[40]Compare id. at 5 ¶¶ 14-15 (stating that Plaintiffs did perform interstate work), with Response, Docket Entry No. 35, Ex. A, Declaration of Max Lucas, ¶ 7 (stating that he never performed interstate work) and id., Ex. B, Declaration of Uranui "George" Lucas (stating that he never performed interstate work).

Defendants were exempt from the overtime provisions of 29 U.S.C. § 207 for employment existing before June 6, 2008.

**D.   Application of the MCA Exemption:   Post-June 6, 2008**

In addition to amending the definition of "motor carrier," the TCA also provides that 29 U.S.C. § 207 shall apply to a "covered employee" notwithstanding 29 U.S.C. § 213(b)(1).  TCA § 306(a), 122 Stat. 1572, 1620.  Accordingly, the TCA made the FLSA's overtime provisions applicable to any "covered employee," which is defined as an individual:

(1)   who is employed by a motor carrier . . .;

(2)   [w]hose work, in whole or in part, is defined

(A) as that of a driver, driver's helper, loader, or mechanic; and

(B) [a]s affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce . . .; and

(3)  who performs duties on motor vehicles weighing 10,000 pounds or less.

Id. § 306(c), 122 Stat. 1572, 1621.  Thus, an employee who works for an MCA motor carrier and works on or with non-commercial vehicles (i.e., vehicles weighing 10,000 pounds or less) may now be entitled to overtime compensation.  To be entitled to overtime pay an employee must perform some meaningful work for more than an insubstantial time with vehicles weighing 10,000 pounds or less. Allen, 846 F. Supp. 2d at 705.  Only employees employed on or after June 6, 2008, may be considered "covered employees."

-21-

As discussed above, Defendants have provided evidence that both NOYPI and Pioneer maintained fleets of commercial vehicles, i.e., vehicles with GVWRs in excess of 10,001 pounds.[41]  In their Response Plaintiffs offered no evidence that they worked with non-commercial vehicles.  Plaintiffs merely argued that Defendants did not submit evidence that Plaintiffs specifically performed work with commercial vehicles.[42]  Plaintiffs' argument does not raise a genuine issue of fact that will preclude summary judgment for Defendants.  The summary judgment evidence before the court establishes that Defendants' vehicles were commercial vehicles and that Plaintiffs worked as loaders for Defendants.  Accordingly, the court concludes that Plaintiffs did not perform meaningful work for more than an insubstantial time with non-commercial vehicles.  Plaintiffs were thus not "covered employees" under TCA § 306.  Therefore, Defendants' Motion for Summary Judgment will be granted for periods of employment falling on and after June 6, 2008.

## IV.  Conclusion

The court concludes that Defendants NOYPI and Pioneer are carriers subject to the jurisdiction of the Secretary of Transportation.  The summary judgment record also establishes that

---

[41]Defendants' Appendix, Docket Entry No. 32, Ex. 1, Declaration of Raul Sususco, p. 3 ¶ 7; id., Ex. 2, Declaration of Roger Fritcher, p. 41 ¶ 7.

[42]Response, Docket Entry No. 35, p. 10.

Plaintiffs were engaged in safety-affecting operations of motor vehicles in interstate commerce. Furthermore, the evidence before the court establishes that Plaintiffs were not "covered employees" under TCA § 306. Therefore, Defendants' Motion for Summary Judgment will be granted.

## V.   Order

For the reasons explained above, Defendants's Motion for Summary Judgment (Docket Entry No. 31) is **GRANTED.**

**SIGNED** at Houston, Texas, on this 3rd day of October, 2012.

SIM LAKE
UNITED STATES DISTRICT JUDGE